Lisa J. Rodriguez
**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
8 Kings Highway West
Haddonfield, NJ 08033
Telephone: (856) 795-9002
Facsimile: (856) 795-9887

Daniel C. Girard
Steven G. Tidrick
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

**Attorneys for Individual and Representative
Plaintiff Albert Halprin**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALBERT HALPRIN, on behalf of himself and all others similarly situated, | Case No. _____ |
| Plaintiff, | |
| v. | |
| VERIZON WIRELESS SERVICES, LLC and CELLCO PARTNERSHIP, d/b/a VERIZON WIRELESS, | |
| Defendants. | |

## ORIGINAL CLASS ACTION COMPLAINT

Plaintiff Albert Halprin, on behalf of himself and all others similarly situated, alleges as follows against Defendants Verizon Wireless Services, LLC and Cellco Partnership, d/b/a Verizon Wireless (collectively "Verizon Wireless" or "Defendants"):

1

## INTRODUCTION

1.  Verizon Wireless is a cellular service provider that allows its customers to use AOL Instant Messenger ("AIM") for "instant messaging" on the Verizon Wireless cellular network. Verizon Wireless represents that customers will be charged only for messages sent or received. Contrary to Verizon's representations, after a Verizon Wireless consumer logs in to AIM on a Verizon Wireless cell phone, Verizon Wireless imposes charges which Verizon Wireless claims are for instant messages, but actually are imposed simply as a result of logging in, and this occurs even if the user does not send or receive any instant messages. Plaintiff further alleges that when customers complain about these charges, Verizon Wireless "upsells" customers to more expensive monthly packages and thus profits further from these improper charges.

## JURISDICTION AND VENUE

2.  The Court has jurisdiction over the action, which alleges violations of Section 201 of the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. § 201 *et seq.*, and the federal declaratory relief statute, 28 U.S.C. §§ 2201 *et seq.*, pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's state law claims for violations of the New Jersey Consumer Fraud Act ("NJCFA") and breach of contract, pursuant to 28 U.S.C. § 1367.

3.  Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) and (c). Defendants maintain their principal place of business in Bedminster, New Jersey, and regularly transact business here. A substantial part of the events and conduct giving rise to the obligations, liabilities, breaches, and/or violations of law complained of occurred in or emanated from this District, and Defendants conduct business in this District.

## PARTIES

4.  Plaintiff Albert Halprin is a resident of Fairfax County, Virginia.

5.      Defendants Verizon Wireless Services, LLC and Cellco Partnership, d/b/a Verizon Wireless are both corporations organized and existing under the laws of the State of Delaware with principal places of business in Bedminster, New Jersey.

## SUBSTANTIVE ALLEGATIONS

6.      Instant messages or instant messaging ("IM") is a form of real-time electronic communication in which typed text is transmitted between two or more people. During an IM conversation, each line of typed text is transmitted right after a new line is started.

7.      One of the most widely used IM applications is AOL Instant Messenger ("AIM"), which AOL, LLC ("AOL"), formerly known as America Online, Inc., first released in May 1997. One feature of AIM is a "Buddy List," which is a list of other AIM users selected by the user showing the status of those other users, for example, whether they are "online," "away," "idle," or "offline." By August 1999, there were an estimated 45 million users of AIM.

8.      When AIM was first released, AIM users needed to be online (e.g., connected to the Internet via a personal computer) in order to send or receive instant messages via AIM. In approximately September 2002, AOL and Verizon Wireless, the nation's largest wireless service provider, announced that AIM was available for Verizon Wireless customers.

9.      In a press release dated September 25, 2002, Verizon Wireless stated: "With this launch, customers can quickly and easily send short messages to everyone on their Buddy List® without needing to go online via a PC. With the AIM service, Verizon Wireless customers can:

- Exchange instant messages with others, regardless of whether they are signed on via a computer, mobile phone or other wireless device;

- See when their friends, family and colleagues are online via the Buddy List feature and be alerted when their buddies sign on;

- Use the same AOL or AIM screen name and password as they do on their computers;

- Send and receive private text messages in real-time;

- Set privacy preferences, allowing them to block instant messages from certain people and to choose who is able to see when they are signed on;

- Discreetly communicate in situations where speaking out loud is inappropriate such as in business meetings, theaters or restaurants."

3

10. Several of these features, including the ability to know if one's "buddies" are online and to be alerted when buddies sign on, distinguish Verizon's "instant messaging" service from "text messaging," also known as "Short Message Service" ("SMS"). SMS is a different service, distinct from instant messaging, that was available to Verizon Wireless customers before September 2002, and at present is still available to Verizon Wireless customers.

11. In its September 25, 2002 press release, Verizon stated that "The AIM service does not use airtime minutes" and "Verizon Wireless customers using the AIM service will only be charged for the messages sent and received according to their Verizon Wireless price plan."

12. Verizon Wireless represents to its customers that "Instant Messages are charged just like Text Messages" and that there is "no extra fee to use the AIM service." Verizon Wireless also states: "There is no extra fee to use the AIM service. You will also not be charged airtime while using AIM. However, you will be billed per message according to your Calling Plan or Text Messaging plan. AIM works the same way as text messaging."

13. Verizon Wireless's billing practices are inconsistent with its representations to its customers. After a Verizon Wireless consumer logs in to AIM on a Verizon Wireless cell phone, Verizon Wireless imposes charges which Verizon Wireless claims are for instant messages, but actually are imposed simply as a result of logging in, and this occurs even if the user does not send or receive any instant messages.

14. Verizon Wireless responds to complaints about excessive billing by attempting to "upsell" customers to more expensive monthly packages and thus profit further from these charges.

<b><u>PLAINTIFF'S EXPERIENCES</u></b>

15. Plaintiff Albert Halprin is a customer of Verizon Wireless. While he was reviewing charges for a Verizon Wireless statement dated March 19, 2007, Plaintiff Halprin discovered a surprisingly large number of $0.10 charges labeled "Domestic – Text," including several instances in which there were ten or more charges, and as many as 17 charges, over the span of a single minute.

16. After discovering these charges, Plaintiff Halprin contacted Verizon Wireless. Verizon Wireless claimed that the charges were for instant messages associated with AIM. Halprin complained that the bill did not accurately reflect messages actually sent or received.

17. Verizon Wireless's customer service representative acknowledged that other customers had complained of the same billing problem and suggested he upgrade to a more expensive monthly plan whereby Verizon Wireless charges a flat rate for a high volume of instant messages. Plaintiff Halprin therefore was upsold retroactively to a more expensive monthly plan.

18. Verizon Wireless charged Plaintiff Halprin for instant messages that were not actually sent or received.

19. Plaintiff Halprin has paid higher monthly fees as a result of Defendants' conduct.

## NO ENFORCEABLE AGREEMENT TO ARBITRATE

20. In its "terms and conditions," Verizon Wireless includes clauses that purport to impose on its customers a requirement of mandatory arbitration. These terms and conditions constitute contracts of adhesion. They are drafted entirely by Verizon Wireless on a take-it-or-leave it basis without the opportunity for the customer to negotiate. Consumers do not have the bargaining power to negotiate changes to these terms and conditions.

21. Verizon Wireless's terms and conditions that purport to require mandatory arbitration are unconscionable in this setting where disputes between the contracting parties predictably involve small amounts of damages, such that rational consumers may decline to pursue individual lawsuits because it may not be worth the time spent prosecuting the suit. In practice, these terms and conditions, if enforceable, would functionally exculpate wrongful conduct by immunizing Verizon Wireless from responsibility. Courts have held that mandatory arbitration provisions such as these are unconscionable and unenforceable. *See, e.g., Muhammad v. County Bank of Rehoboth Beach*, 912 A.2d 88, 100-101 (N.J. 2006); *Creighton v. Blockbuster Inc.*, 2007 U.S. Dist. LEXIS 39265, at *7-9 (D. Or. Nov. 28, 2006); *Scott v. Cingular Wireless*, 161 P.3d 1000, 2007 Wash. LEXIS 479, at *22-23 (Wash. July 12, 2007).

22. Verizon Wireless's terms and conditions that purport to require mandatory arbitration are also unconscionable because motions to compel enforcement of these clauses result in unnecessary delay and costs on customers who assert meritorious claims. Thus, these terms and conditions discourage consumers with meritorious claims from vindicating their legal rights, and have the practical effect of limiting substantive rights and remedies available to consumers. *See, e.g., Ting v. AT&T Corp.*, 319 F.3d 1126, 1151 (9th Cir. 2003).

## CLASS ACTION ALLEGATIONS

23. Plaintiff Halprin brings this action on behalf of himself and all others similarly situated, as members of a proposed plaintiff class, defined as follows:

> All persons whom Verizon Wireless charged for use of AOL Instant Messenger ("AIM") from August 17, 2001 to the present.

Excluded from the class are Defendants, any entities in which Defendants have a controlling interest, Defendants' officers, directors, and employees; Defendants' legal representatives, heirs, successors, and assigns; any Judge to whom this case is assigned and his or her immediate family.

24. This action has been brought and may properly be maintained, pursuant to Federal Rules of Civil Procedure 23(a)(1)-(4), 23(b)(1), (2) or (3), and case law thereunder.

25. **Numerosity Of The Class – Fed.R.Civ.P. 23(a)(1).** Class members are so numerous that their individual joinder is impractible. Plaintiff estimates that there are thousands of members in the proposed class. The precise numbers of class members and their addresses are unknown to Plaintiff, but can be obtained from information and records in Defendants' possession and control.

26. **Existence And Predominance Of Common Questions Of Law And Fact – Fed.R.Civ.P. 23(a)(2), 23(b)(3).** Common questions of law and fact exist as to all members of the class. These predominate over any questions affecting only individual class members. These common legal and factual questions include, but are not limited to the following:

6

a. Whether Verizon Wireless has charged Plaintiff and class members for instant messages that have not actually been sent or received;

b. Whether Verizon Wireless's charges for instant messaging, described above, are charges and/or practices in connection with communication service, subject to the requirements of the Federal Communications Act, 47 U.S.C. § 201(b);

c. Whether Verizon Wireless's charges for instant messaging are unjust and/or unlawful under Section 201(b);

d. Whether Verizon Wireless's imposition of charges for instant messaging, as described above, is an act or practice in the conduct of trade or commerce;

e. Whether the imposition of charges for instant messaging, as described above, is deceptive, unfair, and unconscionable because Verizon Wireless charges consumers for instant messages that are not actually sent or received;

f. Whether Verizon Wireless's practice of upselling consumers to more expensive monthly plans, based on complaints about instant messaging charges, is deceptive, unfair, and unconscionable because Verizon Wireless charges consumers for instant messages that are not actually sent or received;

g. Whether, as a direct and proximate result of Verizon Wireless's deceptive and unfair acts and practices, Plaintiff and class members suffered an ascertainable loss;

h. Whether Verizon Wireless has committed deceptive acts or practices within the meaning of the New Jersey Consumer Fraud Act by engaging in the acts and practices alleged herein;

i. Whether Verizon Wireless has breached its contracts with Plaintiff and class members by charging for instant messages that are not in fact sent or received;

j. Whether Verizon Wireless breached its contracts with Plaintiff and class members by its practice of upselling consumers to more expensive monthly plans;

k. Whether Plaintiff and class members are entitled to injunctive relief; and

l. Whether Plaintiff and class members are entitled to damages, interest, and attorneys' fees and costs.

27. **Typicality – Fed.R.Civ.P. 23(a)(3).** Plaintiff's claims are typical of the claims of the class because, as with other class members, Verizon Wireless imposed charges on Plaintiff for instant messages associated with AOL Instant Messenger.

28. **Adequacy – Fed.R.Civ.P. 23(a)(4).** Plaintiff is an adequate representative of the class because Plaintiff's interests do not conflict with the interests of the class members Plaintiff seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation. Plaintiff intends to prosecute this action vigorously. The interests of the class members will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

29. **Superiority – Fed.R.Civ.P. 23(b)(3).** A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's claims. The damages suffered by each individual class member are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the class members individually to redress effectively the wrongs done to them. Furthermore, even if class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system from the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

30. **Certification under Fed. R. Civ. P. 23(b)(1) and/or 23(b)(2).** Certification may also be appropriate under Fed. R. Civ. P. 23(b)(1) and/or (b)(2) because:

   a. the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class

8

members which would establish incompatible standards of conduct for Defendants;

b. the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION

**(For Violations of § 201 of the Federal Communications Act, 47 U.S.C. § 201 *et seq.*)**

31. Plaintiff Halprin, on behalf of himself and the class, hereby realleges and incorporates by reference all paragraphs previously alleged herein.

32. Verizon Wireless is a common carrier engaged in interstate or foreign communication by wire or radio, and is subject to the common carrier regulation set forth in the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. § 201 *et seq.*

33. Verizon Wireless's charges for instant messages, as described above, are charges and/or practices in connection with communication service, subject to the requirements of 47 U.S.C. § 201(b).

34. Section 201(b) of the FCA requires that all charges, practices, classifications, and regulations for and in connection with communication service, shall be just and reasonable.

35. Verizon Wireless's charges for instant messages that are not actually sent or received are unjust and/or unlawful under Section 201(b).

36. As a direct and proximate cause of Defendants' violation of 47 U.S.C. § 201(b) described above, Plaintiff and the class have been damaged.

37.     This action is timely in that Plaintiff brought his FCA claim within two years of the date of the occurrence of the violations alleged herein. 47 U.S.C. § 415(b).

## SECOND CAUSE OF ACTION

**(For Violations of New Jersey Consumer Fraud Act, N.J. Rev. Stat. § 56:8-1 *et seq.*)**

38.     Plaintiff Halprin, on behalf of himself and the class, hereby realleges and incorporates by reference all paragraphs previously alleged herein.

39.     The New Jersey Consumer Fraud Act, N.J. Rev. Stat. § 56:8-1 *et seq.* ("NJCFA"), was enacted and designed to protect consumers against unfair, deceptive, or fraudulent business practices.

40.     N.J. Rev. Stat. § 56:8-2 provides:

> "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact . . . whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice"

41.     At all relevant times, Plaintiff, class members and Defendants were "persons" within the meaning of N.J. Rev. Stat. § 56:8-1.

42.     Verizon Wireless's imposition of charges for instant messaging, as described above, is an act or practice in the conduct of trade or commerce.

43.     Verizon Wireless's imposition of charges for instant messaging, as described above, is deceptive, unfair, and unconscionable because Verizon Wireless charges consumers for instant messages that are not in fact sent or received.

44.     Verizon Wireless's practice of upselling consumers to more expensive monthly plans, based on complaints about instant messaging charges, is deceptive, unfair, and unconscionable because Verizon Wireless charges consumers for instant messages that are not in fact sent or received.

45.     As a direct and proximate result of Verizon Wireless's deceptive, unfair, and unconscionable acts and practices, Plaintiff and members of the class suffered an ascertainable

loss, including but not limited to the amount of the charges for instant messages that were not in fact sent or received. Equity and good conscience requires restoration of their money; injunctive relief, including but not limited to, restricting Verizon Wireless from continuing to charge for instant messages that are not in fact sent or received.

46. Verizon Wireless has committed deceptive, unfair, and unconscionable acts or practices within the meaning of the NJCFA by engaging in the acts and practices alleged herein.

47. This action is timely in that Plaintiff brought his NJCFA claim within six years of the date of the occurrence of the violations alleged herein. N.J. Rev. Stat. § 2A:14-1.

## THIRD CAUSE OF ACTION
### (For Breach of Contract)

48. Plaintiff Halprin, on behalf of himself and the class, hereby realleges and incorporates by reference all paragraphs previously alleged herein.

49. Verizon Wireless breached its contracts with Plaintiff and the class by charging for instant messages that are not in fact sent or received.

50. As a result of Verizon Wireless's aforesaid breaches of contract, Plaintiff and the class were damaged by being charged for instant messages that are not in fact sent or received.

51. Customers who enter into cellular telephone service contracts have a reasonable expectation that complaints of unauthorized or excessive charges will be reasonably investigated and refunded. This is an implied term of the contract.

52. Verizon Wireless breached its contracts with Plaintiff and the class by its practice of upselling consumers to more expensive monthly plans, based on complaints about unauthorized or excessive instant messaging charges, because consumers are charged for instant messages that are not in fact sent or received.

53. As a result of the above contractual breaches, and each of them, Plaintiff is informed and believes that Verizon Wireless charged class members excess charges and monthly fees in an amount according to proof at trial.

## FOURTH CAUSE OF ACTION

### (For Declaratory Relief Pursuant to 28 U.S.C. § 2201 *et seq.*)

54. Plaintiff Halprin, on behalf of himself and the class, hereby realleges and incorporates by reference all paragraphs previously alleged herein.

55. An actual controversy, over which this Court has jurisdiction, has arisen and exists between the parties relating to the legal rights and duties of Plaintiff and Defendants for which Plaintiff desires a declaration of rights.

56. Verizon Wireless has charged Plaintiff and class members for instant messages that were not in fact sent or received.

57. A declaratory judgment is necessary to determine Plaintiff's and class members' rights in connection with Verizon Wireless's charges for instant messages that are not in fact sent or received, including, among other things, a declaration that Defendants have violated § 201 of the Federal Communications Act, 47 U.S.C. § 201 *et seq.*; a declaration that Defendants have violated the New Jersey Consumer Fraud Act, N.J. Rev. Stat. § 56:8-1 *et seq.*; and a declaration that Defendants charged Plaintiff and class members for instant messages that were not in fact sent or received, in violation of Verizon Wireless's contracts with Plaintiff and the class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendants as follows:

58. For an order certifying the class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel of record to represent the class;

59. For actual damages sustained by Plaintiff and all others similarly situated as a result of Defendant's unlawful conduct and practices complained of herein;

60. Equitable relief as the Court deems proper including but not limited to restitution and/or disgorgement;

61. For pre-judgment and post-judgment interest;

62. For attorneys' fees and costs of suit, including expert witness fees;

63. For injunctive relief, including but not limited to, restricting Defendants from continuing to charge consumers for instant messages that are not in fact sent or received; and

64. For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

65. Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: August 22, 2007

Respectfully submitted,

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**

By: /s Lisa J. Rodriguez
Lisa J. Rodriguez
8 Kings Highway West
Haddonfield, NJ 08033
Telephone: (856) 795-9002
Facsimile: (856) 795-9887

**GIRARD GIBBS LLP**
Daniel C. Girard
Steven G. Tidrick
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

**Attorneys for Individual and Representative Plaintiff Albert Halprin**