NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ALBERT HALPRIN, et al., | : | Civil Action No. 07-4015 (JAP) |
|  | : |  |
| Plaintiffs, | : |  |
|  | : | **OPINION and ORDER** |
| v. | : |  |
|  | : |  |
| VERIZON WIRELESS SERVICES, LLC, | : |  |
| et al., | : |  |
|  | : |  |
| Defendants. | : |  |

**I. Introduction**

This matter comes before the Court upon a motion by Defendants Verizon Wireless Services, LLC and Cellco Partnership d/b/a Verizon Wireless (hereinafter collectively "Verizon") to compel arbitration and dismiss the action in favor of arbitration, or alternatively, to stay the action pending arbitration [Docket Entry No. 12].  Verizon filed a Brief  ("Moving Brief"), a Declaration of Scott M. Johnson ("Decl. of Johnson") and a Declaration of Joan Thomas ("Decl. of Thomas") in Support of its Motion [Docket Entry No. 29].  Plaintiff Albert Halprin filed opposition to Verizon's Motion ("Opposition Brief"), as well as a Declaration of Steven G. Tidrick ("Decl. of Tidrick") and a Declaration of Albert Halprin ("Decl. of Halprin") [Docket Entry No. 24].  Verizon then filed a Reply Brief in Further Support of its Motion ("Reply Brief") and a Supplemental Declaration of Scott M. Johnson ("Supp. Decl. of Johnson") [Docket Entry No. 27].  Plaintiff then filed a motion to strike defendants' reply brief in support of defendant's motion ("Motion to Strike Moving Brief")[Docket Entry No. 30].  Defendants filed opposition to Plaintiff's motion to strike their reply brief.  Having considered all submissions of the parties without oral argument pursuant to

FED.R.CIV.P. 78, and for good cause shown, Verizon's Motion to Compel Arbitration and Stay this Matter is GRANTED.  Halprin's Motion to strike Defendants' reply brief is DENIED.

## II. Background

Plaintiff, Albert Halprin, a resident of Fairfax County, VA, is a customer of Verizon Wireless. (Exh. A to Decl. of Thomas at 2-4).  As part of his Verizon Wireless service, Halprin utilized an AOL Instant Messenger (hereinafter "AIM") service, which provides customers with the opportunity to send instant messages to other AIM users by telephone, a service similar to, but distinguishable from, text messaging.  (Exh. A to Decl. of Thomas at 4).  Verizon represents to its customers that "Instant Messages are charged just like Text messages" and there is "no extra fee to use the AIM service." (*Id.*).  Verizon further tells customers that the AIM service does not utilize airtime for billing purposes, but rather that billing will be calculated on a "per message" basis.  (*Id.*). After discovering what Plaintiff alleges is a billing error in his March 19, 2007 bill from Verizon, Halprin contacted a Verizon Wireless customer service representative to amerliorate what he believed to be an incorrect charge for a number of $0.10 "Domestic—Text" charges.  (*Id.*).  The customer service representative informed Halprin that the charges stemmed from instant messages sent via the AIM service on Halprin's phone, and suggested that in order to avoid such charges in the future, he should upgrade his plan to a "more expensive monthly plan whereby Verizon Wireless charges a flat rate for a high volume of instant messages." (*Id.* at 5).  While Halprin denies having sent or received the messages for which he was charged, he apparently agreed to sign onto the more expensive monthly plan, which was applied retroactively (*Id.*).

As a result of such allegedly false charges on Halprin's bill, he has brought four causes of action on behalf of himself and a class of similarly situated persons whom "Verizon Wireless

charged for use of AOL Instant Messenger ("AIM") from August 17, 2001 to the present." (*Id.* at 6).  The claims include a violation of §201 of the Federal Communications Act, violations of the New Jersey Consumer Fraud Act, a breach of contract for Verizon's alleged practice of charging fees when no message was sent or received, and finally a claim for a declaration that the alleged practices violate the Federal Communications Act and the New Jersey Consumer Fraud Act, and that they constitute a breach of contract.  (Moving Brief at 4).

     At issue in the instant motion is the enforceability of Verizon's terms of service agreement with the Plaintiff.  After speaking with the Verizon customer service representative about the March 19, 2007 bill, Halprin changed his price plan online for all four lines on his account, each of which have a 703 area code, which is based in northern Virginia.  (Decl. of Johnson at 3).  On April 19, 2007, according to Verizon's electronic customer account records, Halprin entered into a new agreement for service with Verizon as a stipulation of his changing the price plans for the lines on his account. (*Id.*).  He was required to check a box acknowledging these new terms of service for the new agreement, and Verizon's records indicate that he did so on April 19, 2007. (*Id.*).

     The new service agreement between Verizon and Halprin provides that all disputes must be resolved through arbitration.  (*See* Exh. A to Decl. of Johnson).  It also provides that class arbitrations are not permitted. (*Id.*).  The agreement states, in relevant part, that "[w]e each agree to settle disputes (except certain small claims) only by arbitration." (Exh. A to Decl. of Johnson at 11).  This section of the agreement appears in bold, capital print set apart in a section titled "Dispute Resolution and Mandatory Arbitration." (*Id.*).  The Agreement also states that "[t]his agreement doesn't permit class arbitrations." (*Id.*).  In addition to an arbitration clause and a class action waiver, the Agreement also contains a choice of law provision, which states: "[T]his agreement and disputes

3

covered by it are governed by the laws of the state encompassing the area code assigned to your wireless phone number when you accepted this agreement, without regard to the conflicts of laws rules of that state." (*Id.* at 13-14).

### III.  Analysis

A.      *The Arbitration Clause and Class Action Waiver are enforceable under the FAA.*

The Federal Arbitration Act ("FAA") provides, in Section 2, that an arbitration agreement "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2.  The Act was implemented "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts."   *Gay v. Creditinform*, 511 F.3d 369, 378 (3d Cir. 2007) (*quoting Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).  The FAA also expresses a "federal policy favoring arbitration," and the Supreme Court "has mandated that 'any doubts concerning the scope of arbitrable issues    be resolved in favor of arbitration.'" *Homa v. American Express Co.*, 496 F. Supp. 2d 440, 446 (*citing Moses H. Cone Mem'l Hsop. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  Therefore, after the implementation of the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable save upon grounds *as exist at law or in equity for the revocation of any contract.*" 9 U.S.C. §2 (emphasis added).  Courts, including the Supreme Court and Courts of Appeals, often enforce arbitration agreements that are included in consumer contracts like the one in the instant matter.  *Homa*, 496 F. Supp. 2d at 446.

Neither party contends that the arbitration clause and the class action waiver are unenforceable under the FAA. As there is both strong precedential and policy driven support for

enforcing the arbitration clause under the FAA, the Court finds the clauses in issue to be enforceable under the FAA. The Plaintiff, however, argues that these clauses are unenforceable "in law or equity." 9 U.S.C. §2. In order to determine the validity of the Plaintiff's argument regarding the unenforceability of the clauses in law or equity, the Court must examine the enforceability under state law. As there are two states with interests in this case, Virginia and New Jersey, the Court will first determine which state's substantive law to apply, and then apply that state's contract laws to determine the enforceability of the arbitration clause and class action waiver.

B.    *Choice of Law considerations favor the application of Virginia law.*

Defendants argue that Virginia law should apply in determining the enforceability of the arbitration agreement due to the choice of law clause in the Agreement, providing that Virginia law should govern all disputes between Plaintiff and Verizon. Moving Brief at 9. Plaintiff argues that New Jersey law should apply despite a choice of law clause. Opposition Brief at 25. Plaintiff argues that the choice of law clause is unenforceable under New Jersey conflicts of law rules because the application of Virginia law would "conflict with a fundamental public policy of New Jersey, which has a greater interest than Virginia on the issue of whether to enforce an arbitration clause     against corporations    in New Jersey." *Id.* Plaintiff further argues that absent the choice of law provision, New Jersey law would apply. *Id.* As explained in detail below, the Court agrees with Defendant that the choice of law clause in the Agreement is enforceable under the New Jersey conflict of laws rules. Therefore, the Court will apply Virginia law when determining whether or not the arbitration and class action waiver clauses of the Agreement are enforceable.

In order to determine which state's law applies in a diversity action, "this court would apply the choice of law rules of the forum state—in this case, those of New Jersey." *Gibbs v. Carnival*

5

*Cruise Lines*, 314 F.3d 125, 131 (3d Cir. 2002)(*citing Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487 (1941)).  When determining whether to enforce a choice of law clause in a contract between two private parties, New Jersey applies §187 of the Restatement (Second) of Conflicts of Laws.  *See Meadox Medicals, Inc. v. Life Systems, Inc.*, 3 F. Supp. 2d 549, 551 (D.N.J. 1998).  §187 of the Restatement (Second) of Conflict of Laws provides:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied    unless either
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which    would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws §187 (1971); *see also Prudential Ins. Co. of Am. v. Nelson*, 11 F. Supp. 2d 572, 578 (D.N.J. 1998).  Therefore, the Court must first analyze whether Virginia has "no substantial relationship" to the parties or the transaction.  Then, It must decide which state has a "materially greater interest."  Should New Jersey have a materially greater interest, then the Court must analyze whether applying Virginia law, as the law named in the parties' choice of law clause, would be contrary to a fundamental public policy of New Jersey.

1. "Substantial Relationship"

The parties' contractual choice of state law, Virginia, satisfies the first part of the two part test laid out by New Jersey's conflict of law rules.  Halprin has an account with Verizon that includes four different phone lines, each of which has a Virginia phone number.  Decl. of Johnson at 4.  In addition to having several phone lines with Virginia based phone numbers, Halprin also made multiple calls "to and from locations in Virginia from the lines associated with [his] account." *Id.* Additionally, the plaintiff himself is domiciled in Virginia.  Exh. A to Decl. of Thomas at 2.  The

6

combination of these several substantial contacts between both the parties and the transaction at issue and the state of Virginia fulfill the first part of the §187 test. *See* Restatement (Second) of Conflict of Law §187, cmt. f (1971)(noting that where performance by one of the parties takes place in a state or where one of the parties is domiciled there, there is a substantial relationship to that state.) Virginia cannot be said to have "no substantial relationship" to the matter giving rise to the instant claim, and is a reasonable choice of law in this case.

## 2. "Materially Greater Interest"

Next, the Court must decide which state has a greater interest, to determine whether applying Virginia law would be contrary to that state's fundamental public policy.  To that end, the Court must weigh New Jersey's interest in this action against Virginia's interest, and determine which is greater.  *See Homa*, 496 F. Supp. 2d at 448; *see also Prudential*, 11 F. Supp. 2d at 578 ("New Jersey courts have implemented the governmental-interest approach to choice of law questions, which requires application of the law of the state with the greatest interest in resolving the particular issue raised by the underlying litigation"). In this case, each state has a substantial interest. After all, New Jersey has an interest in "whether to enforce a clause that bans class actions in order to preclude a class action by a Virginia resident against corporations in New Jersey," Opposition Brief at 32-33, and Virginia has a substantial interest in protecting consumers that reside in Virginia by "applying its consumer protections laws to Virginia residents." Moving Brief at 14.  However, as the court points out in *Homa*, "[e]ven assuming that New Jersey state law would apply in the absence of an effective choice of law provision,    the parties' choice of law controls because application of that law does not violate any fundamental public policy" against class action waivers, as the plaintiff in that case argued.  496 F. Supp. 2d at 448.

Plaintiff relies on *Muhammad* as evidence of a fundamental public policy against class action waivers. Opposition Brief at 29. In *Muhammad v. County Bank of Rehoboth Beach, Del.*, the New Jersey Supreme Court declared unconscionable a class action waiver in a consumer contract between a customer and a bank which gave out "pay day loans." 189 N.J. 1, 6 (2006). The Court specifically held that the class action waiver "in *this* consumer contract is unenforceable." *Id.* (emphasis added). The court's basis for holding that the class action waiver was unenforceable was due to the unconscionability of the particular clause in the consumer contract between Muhammad and the bank.

The contract was considered by the court to be unconscionable because it was one of adhesion, and based its findings on the "degree of economic compulsion motivating the 'adhering' party." *Id.* at 15. In *Muhammad*, the plaintiff had contracted with the defendant bank to obtain a "pay day loan," which the court characterized as a type of loan which "may be [a] necessity for persons who need access to cash and who may have credit difficulty, compelling their acquiescence to loans bearing exorbitant interest rates." *Id.* at 19. This element of necessity is not present in the instant matter; Plaintiff contracted with Defendant in order to obtain a better rate on his cell phone plan, a plan for which he had four different telephone lines. In comparison to a pay day loan, which someone might need in order to have access to cash for necessities, a cell phone plan does not bear the same degree of economic compulsion as that in *Muhammad*.

Indeed, the court in *Muhammad* specifically called for a "fact-sensitive analysis" when analyzing whether or not a class action waiver should be deemed unenforceable due to unconscionability. *Muhammad*, 189 N.J. at 22, n.5. Further, the court explicitly pointed out that its holding did not declare class action waivers to be "*per se* unenforceable." *Id.* at 22 (*citing Gras*

*v. Associates First Capital Co.*, 326 N.J.Super. 42 (2001), *certif. denied*, 171 N.J. 445 (2002)(holding that there was no "inherent conflict     between arbitration and the underlying purpose of [the Consumer Fraud Act]")). Therefore, "*Muhammad* does not stand for the proposition that there is a fundamental public policy in New Jersey against the enforcement of class-arbitration waivers." *Homa*, 496 F. Supp. 2d at 448. Although *Muhammad* stands for the unconscionability of the particular class action waiver discussed in that particular case, it is not evidence of a fundamental public policy against class arbitration waivers in New Jersey.  There is, in fact, no such fundamental public policy.

Therefore, since no fundamental public policy against class arbitration waivers exists in New Jersey, the application of Virginia law will not "be contrary to a fundamental policy of [the] state which has a materially greater interest     in the determination of the particular issue," even were that state New Jersey.  Restatement (Second) of Conflicts of Laws §187.  Since both prongs of the §187 test favor the application of Virginia law, "the law of the state chosen by the parties to govern their contractual rights and duties will be applied." *Id.*  Therefore, the choice of law clause in the contract signed by the parties will be enforced.

C.      *The Arbitration Clause is enforceable under Virginia law.*

When applying Virginia law to the question of enforceability of the arbitration clause and class action waiver, the Court determines that the clauses are enforceable.  In order for a contract to be unconscionable under Virginia law, the Supreme Court of Virginia has mandated that the bargain in the contract must be "one that no man in his senses and not under a delusion would make, on the one hand, and as no fair man would accept, on the other."  *Gay*, 511 F.3d at 391 (*quoting Mgmt. Enters., Inc. v. Thorncroft Co.*, 416 S.E.2d 229, 231 (1992)). The standard of unconscionability in

Virginia further requires that "[t]he inequality [in bargaining power] must be so gross as to shock the conscience." *Id.*  Additionally, under controlling Third Circuit authority interpreting the FAA, the Court must evaluate whether the Agreement as a whole, and not just the arbitration clause, is unconscionable under the Virginia standard.

While Plaintiff argues that the arbitration agreement and class action waiver are unenforceable clauses that should be severed from the contract, the standard under the FAA requires that the agreement as a whole, and not its individual provisions, be found unenforceable.  Indeed, the Court would have to determine that the entire Agreement between the parties is unconscionable in order to invalidate the arbitration agreement. *See Gay*, 511 F.3d 369.  The Court is guided in its interpretation of the FAA by the Third Circuit's opinion in *Gay*.  There, the Court evaluated the enforceability of an arbitration agreement included in a consumer contract under Virginia law. *Id.* The plaintiff, Mary Gay, entered into an agreement with the defendant in order to obtain services that would monitor and improve her credit history.  *Gay*, 511 F.3d at 375.  The agreement between Gay and the defendant stipulated that "any claim arising out of or relating to the Product shall be settled by binding arbitration rules     on an individual basis not consolidated with any other claim." *Id.* Gay argued that the arbitration provision of the agreement "is unconscionable and unenforceable." *Id.* at 376.

In addition to applying the unconscionability law of Virginia to the arbitration clause, the Third Circuit in *Gay* also considered the language of the FAA as "controlling." *Id.* at 394.  The language of §2 of the FAA provides that "an agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law*, 'save upon such grounds as exist at law or in equity for the revocation of *any* contract.'" *Gay*, 511 F.3d at 394 (*quoting Perry v. Thomas*, 482 U.S. 483, 492

(1987))(emphasis in original).  The Third Circuit then explained that in order to invalidate a contract under state law pursuant to the language of the FAA, the Court must determine that the "contract in general" is unenforceable, not just the individual "agreement to arbitrate."  *Gay*, 511 F.3d at 395. Therefore, the Court held that, while Gay, an individual, "surely did not have the same bargaining power as [the defendant corporation] when she entered into the Agreement" as a whole, the "inequality in bargaining power was not 'so gross as to shock the conscience.'" *Gay*, 511 F.3d at 391 (*quoting Mgmt. Enters.*, 416 S.E.2d at 231)).  Because the unconscionability of the agreement must be examined in terms of whether the contract in general is unconscionable, not just the arbitration agreement/class action waiver, a party's reliance "on the uniqueness of the arbitration provision in framing [its] unconscionability argument," is insufficient to maintain a claim of unconscionability. *Gay*, 511 F.3d at 395.

In the instant case, Plaintiff stumbles on the same block that tripped Ms. Gay. Plaintiff argues that the arbitration agreement/class action waiver are facially unconscionable provisions.  However, under the *Gay* decision, the Plaintiff must show that the entire Agreement between him and Verizon is, in general, unconscionable.  Under the Virginia standard, the Plaintiff must therefore show that the bargain provided for in the Agreement as a whole is "one that no man in his senses and not under a delusion would make, on the one hand, and as no fair man would accept, on the other." *Mgmt. Enters.*, 416 S.E.2d at 231.  The inequality between the parties "must be so gross as to shock the conscience." *Id.*

While inequity in bargaining power certainly exists between Halprin, as an individual customer of Verizon, and Verizon, it is not "so gross as to shock the conscience." *Id.*  While Verizon clearly had more bargaining power as between the two parties, Halprin was free to do business with

11

any number of cell phone companies; Verizon was not his only choice.  Additionally, Halprin could have chosen not to obtain a cell phone or to change his plan in order to avoid entering into this agreement.  Verizon phone service, and more specifically AIM service on a cell phone, hardly constitutes the kind of necessity that would cause such a disparity in bargaining power as to "shock the conscience." *Id.*  Halprin also fails to show that the bargain of giving up his right to litigate claims in court in place of vindicating his rights in arbitration is "one that no man in his senses and not under a delusion would make, on the one hand, and as no fair man would accept, on the other." *Mgmt. Enters.*, 416 S.E.2d at 231.  Moreover, the standard set forth in *Gay* would require that the Court find that the user agreement in its totality was a bargain that was unconscionable by the Virginia standard.  That burden has simply not been met in this case.

The Court remains dubious that Plaintiff would prevail even under New Jersey's unconscionablity rubric.  Under New Jersey law, the Court must consider both the procedural and the substantive unconscionability of an agreement.  *See Muhammad*, 189 N.J. at 15.  If an agreement is one of adhesion, where an agreement is "presented on a take-it-or-leave-it basis," then it indicates procedural unconscionability.  *Id.* (*citing Rudbart v. North Jersey District Water Supply Commission,* 127 *N.J.* 344, 353, *cert. denied,* 506 *U.S.* 871 (1992)).  In addition to considering the adhesive nature of a contract, the Court must also consider the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the "adhering" party, and the public interests affected by the contract. *Muhammad*, 189 N.J. at 15-16. In this case, while the user agreement between Halprin and Verizon certainly bears the qualities of an adhesion agreement, the other factors to be considered do not indicate that the entire agreement is

unconscionable.  Therefore, the Plaintiff's arguments would be unsuccessful even under the substantive law of New Jersey.

D.      *Plaintiff's Motion to Strike is Denied Because Defendant's Reply Brief, as well as Mr. Johnson's Supplemental Declaration and exhibits thereto, properly respond to assertions made by Plaintiff in the Opposition Brief.*

It is well-established in this District that a reply brief serves its purpose when it "responds to the opposition brief and explains a position that the respondent has refuted." *Danvers Motor Co. v. Ford Motor Co.*, No. 02-2197 (DMC), 2007 U.S. Dist. LEXIS 7262 at *14-15 (D.N.J. Jan. 31, 2007)(*citing Bayer AG & Bayer Corp. v. Schein Pharm.*, 129 F. Supp. 2d 705, 716 (D.N.J. 2001), *aff'd*, 301 F.3d 1306 (3d Cir. 2002)("It is axiomatic that reply briefs should respond to the respondent's arguments or explain a position in the initial brief that the respondent has refuted.")). Of course, arguments made for the first time in reply should not be accepted by a court. *See Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)("An issue is waived unless a party raises it in its opening brief.").

The instant motion, as described at length above, is predicated on Defendant's belief that an agreement to arbitrate and to waive rights to form a class was reached between it and Plaintiff. Indeed, as part of his initial declaration, Mr. Johnson certified that "[t]o effect this transaction, plaintiff Halprin was required to check a box acknowledging the terms of service for the new agreement, and Verizon Wireless's electronic customer account records reflect that he did check so on April 19, 2007." Decl. of Johnson at ¶ 7. In response to such an argument, Plaintiff filed a declaration of his own, asserting "I do not believe that I agreed to any arbitration clause with Verizon." Decl. of Halprin at ¶ 5.

13

Having reviewed the Reply Brief, supplemental declaration of Mr. Johnson and the attachments thereto, the Court fails to see how any new arguments are raised, and how those submissions are not presented in response to the opposition brief and explain a position that the respondent has refuted. Clearly, Plaintiff refutes that he entered into an agreement with Verizon. The reply papers simply outline Verizon's position that it disputes Plaintiff's position, and attempts to provide a thorough basis for its claim that an agreement exists. Therefore, Plaintiff's motion to strike must fail.

Plaintiff further seeks an Order from this Court mandating the production of Mr. Johnson for a deposition. Based on the foregoing, this request is denied without prejudice, with Plaintiff given leave to re-raise the issue at an appropriate time and in accordance with *L.Civ.R.* 37.1(a)(1).

## IV. Conclusion and Order

Because the Agreement between the parties is not unconscionable under the law of Virginia, and the arbitration agreement is enforceable under the FAA, the Court grants Defendant's motion.

THEREFORE, IT IS on this 8th day of April, 2008,

ORDERED that the Defendant's motion to compel arbitration and to stay proceedings pending arbitration is hereby GRANTED; and it is further

ORDERED that the Plaintiff's motion to strike Defendant's reply is DENIED; and it is further

ORDERED that the matter be STAYED in favor of arbitration; and it is further

ORDERED that Plaintiff is compelled to assert his claim against Defendants on an individual basis in an arbitration proceeding consistent with the terms of the parties' agreement; and it is further

ORDERED that the Clerk of the Court terminate these motions accordingly [Docket Entry Nos. 12 and 30].

Accordingly, this matter is STAYED.


    s/   Tonianne J. Bongiovanni     
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**